And maybe I can – okay, before we start running the clock, let's – let me make sure here on the – let me get logistics settled here. Okay. So you're for Ms. Dominguez, is that correct? That is correct. Will you be the only one arguing? I will. All right. Now, I see more people over at the other table. Yes, my co-counsel. And that's Bethlehem Steel and the government? No. Mr. Boyle is on behalf of the government and Bethlehem Steel is no longer represented. Right. Well, so who are these people? They're with you? They're my co-counsel. Okay, they're with you. On behalf of Ms. Dominguez. All right. And the government got the order from the court that said that you should be – you initially said you didn't want to talk about the merits, but you should be prepared to do so. All right. Thank you. All right. We're ready to start then. Good morning. Good morning. Good morning, everyone.   Good morning, everyone. Good morning. May it please the court, I am Joshua Glellen appearing on behalf of Ms. Dominguez. And in view of the fact that I have only the most general idea of what Mr. Boyle's pitch to the court will be, I would like to save five of my minutes for rebuttal. Yes, you can save as much time as you want because it's all there and if you want to hear what their position is because I will have some questions because it's – you know, maybe I – it's my understanding, if Bethlehem said they can't pay, then the government has to pay, right? We hope that's true. They have the position that it's discretionary. We may want to test that proposition if there's any pushback, but we have no idea at this point what they'll do. Well, that – which is why I found it a little bit curious that – because you lost below in terms of on – in terms of recovery. So you're appealing. Yes. And then if they're the one that ultimately has to pay and they didn't want to talk about the merits, then – I mean, it's not – it's not my – it's not our job as a court to defend the merits of the case, but on the other hand, we just have to look at whatever's there and so if I look at the standard of review here in terms of – I think that it – it sort of boils down to getting over to the hastening, right? Getting – I'm sorry? Over to the hastening, whether this hastened the death. Well, I certainly don't want to give up on the proposition that the stomach cancer also was related to the – there's adequate proof that the stomach cancer also was related to the – but either one – I think you have two judges that want to hear about hastening. Yes. Either one will do for our purposes. If we either have causation of the stomach cancer or we have hastening of death through the respiratory insufficiency. Well, I guess what concerns me here is it's – there's a lot of witnesses, there's a lot of evidence and I know you didn't just fall off the turnip truck and so you know that on appeal, we don't re-weigh the evidence, all right? And what I understand to – and the ALJ heard a lot of evidence and found some more persuasive than others. So how does this get to where you want to go without re-weighing the evidence? First, there is no evidence to support – no evidence to support the ALJ's findings. He just made too many mistakes that are straightforwardly contradicted by the record. Well, I guess what I'm just going to say plainly, to me, it looks like there's some evidence of both. So why isn't this just a question of as – you know, I was a trial judge. I was a trial lawyer. And why isn't that you find some more, you know – I mean, you know what the instructions look like. You don't just count people up and you have to look to what you find credible, what – and you can find – there can be 10 people on one side that you disregard as not having the same amount of weight as one person on the other side. And it seems that the ALJ found this one expert more persuasive than your more experts. So – Well, that – yes, that's what – I'm not going to re-weigh the evidence for you is what I'm going to tell you. I understand that perfectly. That's what – I absolutely do understand that. And we're not looking for a – the only weighing of the evidence that you are permitted to do and all we're asking you to do is determine whether the evidence that the ALJ did rely on, Dr. Leonard's opinions, is substantial on the record considered as a whole, which is to say the ALJ's decision and Dr. Leonard's opinion were built on faulty premises, factually inaccurate premises about what was in the medical records and what the decedent's asbestosis condition had been in the years leading up to his death. What I hear you saying is that there can't be substantial evidence to support the ALJ's decision if it includes false evidence. Is that true? Is that what you're telling me? The only opinion he relied on is based on faulty premises, yes. And so some of that falsity, if I understand your briefs correctly, is that Dr. Leonard ignored four months of respiratory records. Is that true? Yes, he said there was no evidence of any treatment for the respiratory condition. He said there had never been a prescription for oxygen. He ignores the clear, the undisputed record evidence that Mr. Ruby had severely compromised respiratory function. And he ignored the fact that he had pneumonia, asbestosis, and lung disease when he said that there were no respiratory issues. Is that correct? That's correct. And so it's those, what you were arguing in your brief that was a falsity, and so the of the record. No rational mind could look at this record as a whole and determine to credit Dr. Leonard's testimony and opinion with the errors, the factual errors that are displayed by the rest of the record. Was he confronted with those on cross-examination? In large part, yes, yes. But this went beyond just Dr. Leonard, right? I mean, it went also to Dr. Louros, who was one of the plaintiff's experts. Is that true? That those false assumptions were used to discredit Dr. Louros? Yes, yes, ALJ's discrediting the claimant's experts, all of whom were way more highly credentialed than Dr. Leonard, who had no particular expertise in this. He had never even researched any of the questions involved until he was preparing to testify for the insurance carrier in this case, whereas the claimant's experts from every possible relevant field, right down to cell biology, had explained how this is possible, and Dr. Leonard had no expertise and referred to nothing except a couple of cherry-picked studies that had found no stomach cancer from asbestos exposure from drinking water, which is really not the question here. What's your best case to support your proposition that there can't be false statements from the record to be used to support as substantial evidence to affirm the ALJ? Does that make sense? Yes, that certainly makes sense. I'm looking for a case name. Well, I don't have a particular case in mind, but the standard of review that's set out in all the cases, and the brief is full of those, is that the bottom line is it has to make some sense. Well, let me ask you this. My understanding is, obviously, the petitioner's deceased, and then, but now his wife is deceased, so we're now down to the granddaughter? Well, it was only presented as a death claim, so the decedent was never a claimant here. But yes, the widow survived for six years or so after the decedent. Okay. Did this, I know we always contact people about mediation. Was this ever mediated? Well, it went through the mediation program, and Beth Steele was unable to put, unwilling to put anything on the table that was significant. They had not pulled out yet completely, because they did file a brief. That's right. Yes, yes. No, no. It was not that they, not because they didn't have any assets to put on the table. They were unwilling to do so. Counsel, was it mediated in the Ninth Circuit? Yes, it was. Was it mediated in the district court? Well, in the, through the administrative process, it starts before the district director with what amounts to a mediation procedure. But no, there was nothing even approaching success with that. And yes, it was mediated in this court with the circuit mediator. Okay, thank you. Do you want to save your time and let's hear what the other side has to say, and then you have that time to respond to it? Thank you. I would like to do that. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Matthew Boyle on behalf of the director. It might come as a shock to the system, but I am by and large going to agree with the petitioner on the hastening issue. And I think I can explain to you why we're going to do that after a very long weekend of coming through the 900-page record. So, okay, you understand my dilemma that I'm, you know, sitting here as an appellate judge, and I don't really want to re-weigh the evidence, but maybe if I had heard the evidence in the first instance, I would have decided it differently. So are you telling me at this point that you think it should have been decided differently? I do think it should have been decided differently, Your Honor, and I think it is reversible without re-weighing the evidence. I think the biggest problem here is that the reason that the ALJ gave for denying the hastening claim was that he didn't find any of the claimant's experts to be credible. But the problem is that the key findings he relied on in finding them not credible are simply not supported in the record. There's no substantial evidence to support them. And I'll give you the three things that he said, which were the bases of it. And I'd like to talk a little bit about Dr. Leonard before I do that. Dr. Leonard really had no part in the preponderance of the evidence. If you look at the decision at the record excerpts at 25, all Dr. Leonard was used for was rebutting the presumption. Once the judge went on to the preponderance of the evidence part, all he did was look at the claimant's evidence. And he made some factual findings in discrediting the claimant's expert witnesses that simply isn't supported by the record. So the first one is that there's no evidence that the decedent had any respiratory issues at the time of his death, which is demonstrably false. I mean, to begin with... Well, sometimes judges say things, though, in terms of being a judge for many times. You say there's no evidence in the way that what you're really saying is there's no evidence that persuades me, not that there's really no evidence. So there is some evidence, I would agree with you, but you could still find it not persuasive. I think it would be very hard to find it not persuasive, Your Honor, and I'll give you some examples. One example of that, he said he was never prescribed oxygen. That is a false statement of fact. Absolutely a false statement. He was prescribed oxygen. He was prescribed oxygen in 2004 and was on oxygen until 2009. And that was one of your three? That's part of it, Your Honor. One of them is that the medical records closest to Mr. Rewey's death don't show any respiratory issues, which is clearly not accurate. The most recent records before his death were in January and February of 2009. On January 21st, the doctor noted shortness of breath on minimal exertion. On January 30th, new shortness of breath with exertion and rails at lung bases. On February 6th, a warning that a surgery could cause complications because of Mr. Rewey's underlying pulmonary conditions and could cause death. On February 10th, the records show him on two liters of oxygen. But the other problem, Your Honor, is that he was looking, he was saying there were no respiratory problems at the time of death. Probably the most accurate depiction of what he had at the time of death was the autopsy report. And the autopsy report showed not only asbestosis, but extensive pneumonia, part of a right lung missing, a right lobe that was partially encapsulated in a dense layer of fibrous tissue with an obvious tumor. So you have a little trouble breathing with all of that, right? Right. Pleural plaques, pleural fibrosis, moderate emphysema, honeycombing in the lung, and interstitial fibrosis severe in some places. Well, so, okay. You're saying it should be reversed. I am saying it should be vacated on the hastening issue, Your Honor. I think it's probably... What is, you know, I can't, we can't say, okay, we vacate, oh, we could say we could vacate it. But then it goes back, and then they have to, so then they have another hearing. How long do we have to make this go on? I mean, in Bethlehem, it's not showing up here. They're saying they're not going to throw any more money at it. They're not in bankruptcy, right? I believe they are, Your Honor. Are they? Yeah. So, and if they can't pay anything, then the government, the government has a fund to pay on this, right? Correct. Is there any reason this shouldn't be mediated? I mean, how long does this have to go on? I mean, how many times do we have to see everyone? If basically there's, if basically we agree that it should be vacated on the hastening and send it back, then all that that does is then either that there's more hearings or what, you know, whatever they, whatever happens there, which costs more money, is not money that's going to settle the case, or what, so what are you proposing that we do here? Well, I, honestly, Your Honor, I, I don't, I don't think simply vacating the case, reversing the case is appropriate. I, I think a remand is appropriate because in addition to the things I've said that are, that clearly were not correct, there is also the problem, which may solve the entire issue, that the death certificate actually lists interstitial lung disease as a, as a contributing cause of death. Now, asbestos isn't interstitial lung disease. We don't know if it was the interstitial lung disease that was. So why doesn't someone just pay them? Why? Well, because, because I don't think there's enough there, Your Honor, at this point for, just because the, the claims experts were discredited on the wrong basis doesn't mean that we know at this point that Mr. Ruby's death was hastened by, by asbestos, asbestosis. He also had emphysema, and there's no testimony that that was caused by asbestos. He had pneumonia, which could be, but might not be. So there are other things that could have hastened his death that have nothing to do with asbestos exposure at all. So, so if this were, if, okay, so we decide the case, and essentially we don't have Bethlehem here, you're basically saying on the hastening it should be reversed, vacated, and go back. Wouldn't it make sense for this to go to mediation for 30 days, and then we'll render a decision? I mean, if the parties can't. It, it just, you know, there, there seems to be a, you know, I don't know if what you're saying about the, what you're saying about the death certificate, then it's going to go back, and then so you spend a lot more money, and maybe they win there, maybe they don't, but, but looks like Bethlehem's not even going to show up there, so you'll show up, right? I won't personally, but someone will, yes. Someone from there. How much money are we going to spend, is the government going to spend defending something that probably doesn't have, you know, that much of a chance of prevailing on? Well, I, I honestly don't know that we don't have that much of a chance, Your Honor, because I don't think there's enough in the record right now to say that asbestos exposure was the thing that hastened his death, rather than something else, or possibly nothing at all, because there was testimony that it was simply the gastric cancer that he died of, and that the, the respiratory problems, that he would have died at the same time regardless whether those respiratory problems were there or not. So are you going to have to, if, if, if, if, if there is enough there that the court finds in their favor, then are you going to pay, or is Bethlehem, what's going to happen? Well, we will send it to the director of the Office of Workers' Compensation Programs, Your Honor. It is discretionary that they pay these cases, but the discretion is almost never exercised against paying, so. Because they have certain presumptions in favor of themselves when they work and are exposed to this, right? Yes. It's a little bit like, I mean, if police officers have a heart attack, there's a presumption that it's work-related. It doesn't mean it was, but he's entitled to the presumptions on that, and then you get to the other points. Yes, Your Honor. I don't think that has anything to do with it once we go back, because I think the presumptions were, were invoked and rebutted on, on both issues, and I think the LGA was perfectly fine on that. Well, if we ordered this to mediation, would the government show up? I, I think if you ordered the government to do whatever you wanted them to do, we would show up, Your Honor. I think. Okay. Uh, counsel, counsel. Yes, Your Honor. This is Judge Gould. I want to interject a question. If, and this, of course, is subject to what the panel thinks in conference, subject to what the appellant still has to say in response, but if you could write the order for our court precisely, what would it say in, just in a couple of sentences? Would it just vacate and remand to the, to the board? I would say vacate and remand to the boards for remand to an ALJ for further findings on the hastening issue, Your Honor. Okay. Thank you. Mr. Gordon, do you have any other further questions for me? Mr. Boyle, I appreciate the integrity. I know it's difficult to get thrown the curve ball that we threw you at the last minute and told you to defend something that you weren't prepared to defend, and it takes a whole lot more integrity to stand up here and say the things you did, so thank you. Thanks, Judge. Appreciate it. Thank you. Do you agree? I do not agree that it should be remanded open-endedly. It should not, the record should not be reopened. If it were just for another decision on this record, we would have no objection other than the following. Mr. Boyle has said kick it back to the board to kick it back to the ALJ. Well, how would you write the order? I mean, that it's generally when something comes that we have to, we have to send it back. We're not fact finders here. Right. Absolutely. No. So how would, what would you, how would you write the order? I would say that the, if I were the court, I would say the ALJ's decision is reversed because it's unsupported by substantial evidence on the hastening point, need go no further than that, and it is remanded for the ministerial task of awarding benefits for the closed period from the decedent's death until the widow's death at the stipulated compensation rate. That's a ministerial function to simply calculate that and enter an award for that. But what's your, what is your authority for us doing that? I'm sorry, Judge Gould, go ahead. I talked over you. The question I was going to ask was, your colleague just argued that they have other issues besides the, whether the hastening caused this that haven't been decided. So how do you, how do you deal with that? My understanding of the record, my evaluation of the record is there is nothing there on which a reasonable mind could rely. And it is the Court's responsibility to weigh the evidence for substantiality, not to weigh the conflicting evidence against the other evidence, but to judge substantiality. And the case I think I want, Judge Callahan, would be universal camera. Well, I think you're sort of equating this to like a criminal case. And there's an instance in a criminal case where if the Court reverses and finds that a conviction is based on insufficiency of the evidence, it can't be retried. If we reverse it based on errors or, you know, that other things need, it can be retried. Because, because in criminal cases there's something called jeopardy and the government gets one bite at the apple. That doesn't apply in civil cases. So it's, that's what I hear you asking me to say. On this record, there's insufficiency of the evidence and that you should, that we should, that we should say that there's insufficiency of the evidence and that it can't happen again and we should award benefits. We should order an award of benefits. But I don't know what authority there is for that. And you haven't told me any. Well, the record was made extensively, as we've all commented on how extensive the record is here, and if, as I do, you look at that evidence and see no reasonable mind could come to the conclusion that the asbestosis, the severe grade 4 asbestosis with honeycombing of the lungs found on autopsy and by CAT scan four years earlier, that that did not contribute, did not hasten the death of the decedent, if like me you see that's the only possible conclusion that a reasonable mind could reach on this record and that the evidence the ALJ relied on is not substantial on the record considered as a whole. So I'll give you that we have the legal ability to reverse and award benefits. I think you would agree that's extremely unique when that happens. So let's pretend like this isn't the unique case, even though you've done your best to argue otherwise. Is there anything else besides what the government concedes that you would like us to include in the government's proposed order? Yes. I think in view of what Judge Callahan has noted, the substantial delays, the fact that it's a closed period and about $120,000 in total liability, besides attorney's fees, I think it would be worth saying the record should not be reopened. The record was validly made as it is and we don't need to have another hearing. Counsel, what authority do you have, a case authority for the position that we should remand on a closed rather than open record? I don't have any particular authority in mind for that, Judge Gold. I do think, though, that the circumstances of this and the fact, as Mr. Boyle says, in order to send it back at all, you have to send it through the Benefits Review Board. Well, the board takes six months to a year from the expiration of the time for certiorari before they'll even issue an order remanding to the ALJ and the ALJs now, this ALJ, I mean, this is a relative telegram, it's under 20 pages, single-spaced 12-point type. The more typical thing from these ALJs is 100 pages of single-spaced 12-point type and it takes them typically three years from a hearing to issue a decision. I am totally supportive of Judge Callahan's view that this has gone on long enough and this is an unusual case in respect to that. A great deal of time and money was spent on presenting the evidence at hearing and in view of the circumstances of this case, it should not be reopened to need to be tried over. Counsel, let me give you another point on which I'd like your comment. Procedurally, we could write a decision that vacates and remands and we could say either open record or closed record depending on how we view the law on that, but rather than assume then the case would proceed to the board, it would be possible for us to issue another order that would stay our mandate to give the parties a chance to explore mediation, which was the issue that Judge Callahan raised. So what would be wrong with us doing something like that? Nothing. Let the parties explore mediation for a certain period of time and if they don't want to mediate voluntarily, then that's the end of that, then it goes back to the board. The only objection I could possibly have to such an order would be that it takes the board so long to act anyway that rather than having them wait, if it's going to be kicked back to an ALJ, we don't want any more delay in that than we'll be there anyway. The type of order I'm thinking about, which I've seen in a few cases, would only give the parties a short time like 10 days or two weeks to decide if they want to mediate. If they both say they want to mediate and then they go into those proceedings, that would take some more time, but if it was voluntary, I assume that no one would check. People are different in mediation after they've come to court and the mediators can listen to what oral arguments sounded like and they can listen to what position the government took and that Bethlehem didn't show up. Mediation at this particular juncture, the positions of the parties are different than they were previously. Bethlehem will not even be in the mediation this time and they were the ones who were essentially unwilling to mediate before, so yes, I would not object to that. All right. Any additional questions, Judge Gold? No. All right. Thank you. This matter will stand submitted.
judges: Gould, Callahan, Bough